# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. CCB-16-0267** |
| | ) | |
| **SYDNI FRAZIER,** | ) | |
|     a/k/a Sid | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MOTION FOR A PROTECTIVE ORDER

The United States of America, by and through its attorneys, Robert K. Hur, United States Attorney for the District of Maryland, and Christina A. Hoffman, Assistant United States Attorney for said District, hereby moves this Court for a protective order prohibiting defense counsel from providing copies of trial transcripts to the Defendant, Sydni Frazier, who is currently incarcerated pending trial.

    1.    On June 1, 2017, a federal grand jury returned a Second Superseding Indictment in the above-captioned case, charging the Defendant with conspiracy to participate in a racketeering enterprise known as Murdaland Mafia Piru (Count One), conspiracy to distribute a kilogram or more of heroin and 280 grams or more of cocaine base (Count Two), possession of firearms and ammunition by a felon (Count 22), and possession with intent to distribute heroin and fentanyl (Count 29).

    2.    The Defendant proceeded to trial with five co-defendants on March 18, 2019. The evidence at trial established that on August 10, 2016, the Defendant and one or more co-conspirators abducted, bound, and murdered Ricardo Johnson, a/k/a "Uncle Rick," and then

attempted to set his body on fire. Later that day, the Defendant fled from police and discarded two 9mm caliber firearms that had been used to kill the victim, as well as a pair of gloves that had the Defendant's DNA on the insides, and the victim's DNA on the outsides.

3. A wealth of evidence established that the Defendant murdered Ricardo Johnson, at least in part, because he was rumored to be cooperating with law enforcement. According to the testimony of multiple witnesses, the Defendant was affiliated with the Bloods gang Murdaland Mafia Piru (MMP) and sold drugs with MMP members in the gang's territory in the 5200 block of Windsor Mill Road. One of the central tenets of the gang was a rule that cooperation with law enforcement is punishable by death. Two witnesses testified that MMP's leader, Dante Bailey, had authorized Johnson's murder based on a belief that Johnson was cooperating with law enforcement. Consistent with the witnesses' testimony, wiretap calls established that the victim had been deemed an enemy of MMP, and members of the gang wanted him dead.

4. The government also introduced a recording from a cell phone seized from the Defendant, in which the Defendant stated that he felt obligated to kill anyone who cooperated with law enforcement. Specifically, in a conversation on July 27, 2016—roughly two weeks before Johnson was killed—an associate of the Defendant's talked about how "fucked up this city is" and referred to the murder of a young rap artist's brother. The Defendant pointed out that the murder victim "told," *i.e.*, cooperated with law enforcement. The associate objected, saying, "But at the end of the day, they kilt his brother. That's his blood brother!" The Defendant replied: "***I understand. A rat not supposed to live, though. If my brother a rat, and I gotta kill him yo, I might have to do that, my nigga. That tellin' shit is serious, yo.***"

5. In the fifth week of trial, after the Government had finished presenting evidence regarding the Ricardo Johnson murder, the Defendant's court-appointed attorney, Christopher Davis, had a medical emergency that made it impossible for him to continue in the case. On April 15, 2019, the Court declared a mistrial due to manifest necessity, severed the Defendant from the case, and ordered that a re-trial be scheduled at a later date.

6. The re-trial is now scheduled to begin on February 24, 2020. It is the Government's understanding that defense counsel have ordered transcripts of the original trial, including transcripts of the testimony of cooperating witnesses, and that those transcripts have been or will be completed at some point this week (*i.e.*, the week of November 18, 2019).

7. The Government believes that the safety of witnesses will be seriously endangered if the Defendant is permitted to have copies of the trial transcripts in his pretrial detention facility. The case involves the brutal murder of a suspected police informant. The Defendant has expressed his belief that anyone who cooperates with law enforcement deserves to be killed. We have good reason to believe that the trial transcripts will be weaponized if the Defendant is permitted to have them in the jail. That is, the Defendant will use the trial transcripts to prove that particular witnesses cooperated with the Government and to incite others to carry out violence against those witnesses.

8. The Defendant is represented by two competent defense attorneys who have access to the trial transcripts and will be able to review the transcripts with the Defendant in preparation for trial. There is no need for the Defendant, himself, to have copies of the transcripts in the jail, and the Defendant will not suffer any prejudice to his defense if he is denied access to the transcripts.

9. The Fourth Circuit and other Circuits have approved reasonable limitations on direct provision of discovery materials to incarcerated defendants during trial preparation, even when those defendants were proceeding *pro se*. *See, e.g.*, *United States v. Galloway*, 749 F.3d 238 (4th Cir. 2014) (approving discovery approach in which *pro se* defendant could not take any discovery materials to the detention facility where he was being held but could review the discovery materials in the U.S. Courthouse's lockup area, finding that the inconvenience was justified by security concerns); *United States v. Ajala*, 692 Fed. App'x 716, 717 (4th Cir. 2017) (finding that the defendant had not "shown how his lack of access to discovery in his cell affected his ability to represent himself at trial"); *United States v. Bisong*, 645 F.3d 384, 396 (D.C. Cir. 2011) (holding that, "[e]ven assuming that pro se defendants have a Sixth Amendment right to discovery in preparing their defense," a defendant advancing such a claim "must demonstrate prejudice in order to prevail"); *United States v. Robinson*, 913 F.2d 712, 717 (9th Cir. 1990) (noting that "there is nothing constitutionally offensive about requiring a defendant to choose between appointed counsel and access to legal materials; the sixth amendment is satisfied by the offer of professional representation alone," and describing *Faretta* as requiring "time to prepare and *some access* to materials and witnesses") (citation omitted) (emphasis in original); *United States v. Riley*, No. CR 13-0608 (MJG), 2018 WL 2193858, at *3 (D. Md. May 14, 2018) ("Petitioner contends that his rights were violated because he was not personally provided with discovery materials to keep while incarcerated. However, Petitioner was incarcerated during the time of trial preparation, and was properly denied personal possession of the discovery documents within the facility."), *reconsideration denied*, No. CR 13-0608 (MJG), 2018 WL 2735056 (D. Md. June 7, 2018), *and appeal dismissed*, 735 Fed. App'x 89 (4th Cir. 2018); *see also Farlow v. Beard*, No. CV 14-7482

DOC (AFM), 2016 WL 6106417, at *8 (C.D. Cal. June 24, 2016) (collecting cases and finding no issue where a *pro se* defendant was allowed only to have a particular transcript read to him), *report and recommendation adopted*, No. CV1407482 (DOC-AFM), 2016 WL 6102310 (C.D. Cal. Oct. 19, 2016).

10.  For the foregoing reasons, we respectfully request that the Court issue a protective order prohibiting the defense attorneys from sharing copies of the trial transcripts with the Defendant, and prohibiting the Defendant from possessing copies of the trial transcripts while in pretrial detention.

        Respectfully submitted,

        ROBERT K. HUR
        UNITED STATES ATTORNEY

By: _____/s/_____
     Christina A. Hoffman
     Assistant United States Attorney
     36 South Charles Street, 4th Floor
     Baltimore, Maryland 21201
     410-209-4800

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. CCB-16-0267** |
| | ) | |
| **SYDNI FRAZIER,** | ) | |
|       a/k/a Sid | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

## **ORDER**

For the reasons set forth in the Government's Motion for a Protective Order, the Court finds that the security of witnesses will be endangered if the Defendant is permitted to have copies of the trial transcripts while in pretrial detention in this case, and that the defense will not be prejudiced by restricting access to the transcripts to the Defendant's court-appointed lawyers, who may review them with the Defendant in preparation for trial.

Accordingly it is this _____ day of November 2019,

ORDERED that counsel for the Defendant shall not provide copies of the trial transcripts to the Defendant for use in the jail, and the Defendant shall not possess copies of the trial transcripts while in pretrial detention.

_____
The Honorable Catherine C. Blake
United States District Judge