UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :   Crim. No.:  CCB-16-cr-267 |
| SYDNI FRAZIER | : |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The defendant, by and through counsel, respectfully submits this memorandum in aid of sentencing. He respectfully requests that he be sentenced to 15 years for the reasons outlined below.

**PROCEDURAL BACKGROUND**

1. On January 23, 2017, the Defendant was charged via a complaint with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g) in Criminal Case Number 17-0061. He was indicted on that charge on February 2, 2017. The Indictment was dismissed on June 8, 2017.

2. On June 1, 2017, Frazier was added as a co-defendant in a Second Superseding Indictment in Criminal Case Number 16-267. Count One charged Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d); Count Two charged Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C § 841(a)(1), (b)(1)(A), (b)(1)(C); Count Twenty-Two charged Frazier with being a Felon in Possession of Firearms and

1

Ammunition, in violation of 18 U.S.C. § 922(g); County Twenty-Nine charged Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. § 841.

3. A jury trial began on March 18, 2019. On April 15, 2019, a mistrial was declared as to Mr. Frazier before his case reached the jury.

4. On July 30, 2019, Mr. Frazier was charged in a three-count Third Superseding indictment. Count One charged Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C § 841(a)(1), (b)(1)(A), (b)(1)(C); Count Two charged Possession of a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death, in violation of 18 U.S.C. § 924(c), § 924(j), § 1111, and § 2; Count Three charged Frazier with being a Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g).

5. On March 6, 2020, following a jury trial, Mr. Frazier was found guilty on all counts.

**NO MATERIAL ERRORS IN PSR**

6. There are no material errors in the PSR.

7. Mr. Frazier qualifies for two 5-year mandatory minimum sentences. Count One charged Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C § 841(a)(1), (b)(1)(A), (b)(1)(C)

and the jury found the heroin quantity to be 100 grams or more. This results in a 5-year mandatory minimum.  Count Two charged Possession of a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death, in violation of 18 U.S.C. § 924(c), § 924(j), § 1111, and § 2.  This is punishable by a 5-year mandatory minimum and must run consecutive to the sentence on any other counts of convictions.  Because of these convictions, Mr. Frazier is required, by statute, to be sentenced to a mandatory minimum of 10 years.

8. Mr. Frazier's sentencing guideline range is life without parole.  His PSR guideline calculation is accurate.  PSR at ¶ 103.

## GUIDELINES ARE NOT MADATORY

9.  As it knows, the Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the Court must first calculate the appropriate sentencing range under the Guidelines, it is not bound by the Guidelines or Guidelines Policy Statements. It may make its own policy judgments, even if different from those in the Guidelines. *Kimbrough*, 552 U.S. at 101. The Court must impose a sentence consistent with the terms of 18 U.S.C. § 3553(a) and § 3661.

## SENTENCING FACTORS

10.  The core requirement of 18 U.S.C. §3553(a) is that the court impose *"a sentence sufficient, but not greater than necessary"* to comply with the purposes of sentencing set forth in § 3553(a), which provides no order of priority among the factors. The factors outlined in § 3553(a) are as follows:

• The nature and circumstances of the of the offense and the history and characteristics of the defendant 18 U.S.C. § 3553(a)(1);

• the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A);

• the need for the sentence imposed "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B);

• the need for the sentence imposed "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2) (C);

• the need for the sentence imposed "to *provide the defendant with needed educational or vocational training, medical care*, or other correctional treatment in the most effective manner," 18 U.S.C. § 3552(a)(2)(D)(emphasis added);

• the kinds of available sentences available, 18 U.S.C. § 3553(a)(3);

• the guidelines in effect at the date of sentencing and any pertinent policy statements, 18 U.S.C. § 3553(a)(4) and (5);

• "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6);

• "the need to provide restitution to any victims of the offenses," 18 U.S.C. § 3553(a)(7).

## SIGNIFICANT DOWNWARD VARIANCE WARRANTED

*Fraizer Background & Offense*

11. Sydni Frazier has many faults, but he is not a murderer. The government presented extensive circumstantial evidence connecting Mr. Frazier to the aftermath of the Ricardo Johnson murder, but no direct evidence that Mr. Frazier was even present for the murder itself. Baltimore Police Department Dirt Bike Task officers recovered two handguns that Mr. Frazier was found to have discarded in northwest Baltimore about 10 hours after the murder of Mr. Johnson. There was evidence those guns were used in that murder. At the same time, the officers also recovered a pair of gloves with both Mr. Frazier and Mr. Johnson's DNA on them. There were also text messages to and from a cell phone linked to Mr. Frazier that discussed guns and a robbery around the time Mr. Johnson was abducted and murdered. However, none of this evidence establishes that Mr. Frazier was present on Kloman Street when Mr. Johnson was murdered. Baltimore City Homicide Detective Gary Niedermeir testified that there were multiple

5

shooters and people present at the murder scene. Again, no evidence put Frazier at the scene of the murder, and, in fact, disposing of weapons and other implements of the crime suggest a very different role in this offense.

12. The contention that Mr. Frazier is a cold-blooded killer is further belied by his minor and violence-free criminal record. As the Presentence Investigation Report notes, Mr. Frazier has been convicted of a total of four crimes in his lifetime: possession of marijuana; fourth degree burglary; trespassing; and possession with intent to distribute a narcotic (the sole felony and one for which he received a total sentence of nine days). Even the charges that were brought against Mr. Frazier but dropped are mostly drug and property offenses, with the exceptions of a misdemeanor assault case and disarming a law officer, which charges were both nolle prosed in 2016. Even Mr. Frazier's juvenile record is devoid of crimes of violence. This is not the criminal record of someone whose nature is sufficiently depraved as to shoot someone 26 times.

13. The Presentence Investigation Report states Mr. Frazier "resort[ed]" to the streets" without a father to guide him. Frazier's father was murdered before Sydni even left his mother's womb. A second father just "fell off the face of the earth." PSR at ¶ 83. In any event, this statement understates the power of "the streets" for a young man like Sydni Frazier, having been raised on Bennett Place in the Harlem Park neighborhood. Bennett Place stands out, even by the standards of

west Baltimore, for its bleakness. House after house on the block stand with boarded up doors and windows frames that are empty or still contain a few shards of glass. In fact, it was in Frazier's backyard where Gun Task Force Officer Sean Suiter put a bullet in his brain to escape the horrors of the city.

14. Most people are not born to be what they turn out to be as an adult. Their life experiences strongly influence the direction they turn at different points in their lives. Although not an excuse, it is obvious that Mr. Frazier, for lack of direction, fear, or any connection to mainstream society, simply lacked the skill set to stay on the right track. He lived in an environment where brute force ruled yet avoided becoming a brute himself. He simply learned to survive with the few skills he possessed. The accusation that he was part of a gang is at odds with his life. His brother, with whom he was extremely close, died because of gang violence.

15. Frazier briefly escaped the horrors of his childhood when he was placed in the Salem Children's Trust in Allegany County, Maryland. He had a chance to break free when he obtained a scholarship to play basketball at Allegany Community College in Maryland from 2011 to 2012. In the time he lived and went to school in the foreign environment of western Maryland he enjoyed a semi-normal childhood, as the photographs on the following pages demonstrate. But it is a story that has been repeatedly played out in our courthouse with young inner-city

men from the bowels of Baltimore. The city calls them back, it is familiar, and as chaotic and dangerous as it is, it is home.







16. Sydni Frazier has been diagnosed with ADHD and with bipolar disorder. Impulsivity is the norm with conditions such as these. However, as the preceding pages memorialize, when in a stable environment and given some positive direction, he has flourished in the past. There is no reason to believe, under the right circumstances, he cannot flourish again.

*Deterrence and Public Safety*

17. Frazier has been incarcerated since 2017. He has grown up in pre-trial detention. The crimes for which he stands convicted all occurred when he was barely out of his teens, except for the conspiracy. The indicted conspiracy began when he was 17 years old.[1] His first child was born shortly after his incarceration. He did not have the opportunity to fully grow up.

18. It is also indisputable that as a person ages, the risk of recidivism declines. Gary Sweeten et al., *Age and the Explanation of Crime Revisited*, 42 J. Youth & Adolescence 921 (2013). When graphed, it becomes clear that offenders begin a very steady decline of recidivism once they enter their late twenties. *See* Melissa Kearney et al., The Hamilton Project, *Ten Economic Facts about Crime and Incarceration in the United States* 6 (2014) at page 6, figure 3.

19. Recidivism rates decline dramatically with age. *See* U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, Ex. 9 (2004).

http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

20. Sydni Frazier is young enough to benefit from education and job skills training while incarcerated. He needs this structure to establish the productive, law-abiding life he is capable of achieving. He has never been gainfully employed

---

[1] Though the charged conspiracy began in 2011, there was no evidence Frazier joined at that time.

10

for a significant period of time. It is crucial, however, that he receive assistance in his rehabilitation, which the Bureau of Prisons can provide.

*A Life Sentence is Inappropriate, Unreasonable and Out of line with Other Cases*

21. Considering Mr. Frazier's age at time of the homicide,[2] the state of the evidence, the fact that he was convicted on an aiding and abetting theory, and his background, a sentence of life without parole would be excessive. The United States Sentencing Commission, for statistical purposes, treats a life sentence as 470 months. *See* U.S.S.C., *2019 Annual Report and Sourcebook of Federal Sentencing Statistics*, Table 28, footnote 1, at page 84.

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report-and-Sourcebook.pdf

*See*, Exhibit 1. The murder sentence for a criminal history category III individual is on average 236 months, with a median sentence of 235 months. *Id*. The kidnapping sentence for a criminal history category III individual is on average 226 months, with a median sentence of 160 months. Mr. Frazier is simply not so irreparably dangerous or evil that he should forever lose the chance to become rehabilitated and reintegrate into society.

22. The RICO indictment that Mr. Frazier was originally charged in resulted in convictions of men much older than him and certainly more culpable. Significantly, the kidnapping and murder for which Frazier now stands convicted

---

[2] The homicide charged in Count Three controls his guideline calculation.

was a part of that RICO case. The lead defendant, Dante Bailey, was convicted of multiple murders and proven to have orchestrated much more chaos and destruction than any other defendant in the case. He ordered others to carry out the murder of the victim Frazier now stands convicted of killing. Bailey was sentenced to life without parole. Frazier's conduct pales in comparison. Dontray Johnson was indicted for a VICAR offense and was sentenced to 360 months after pleading guilty to a drug charge., Randy Banks (216 months) and Jamal Lockley (360) were also much older than Frazier and worked in concert with Bailey. The disparity is unsettling. Mr. Frazier's friend, Shakeen Davis, was heavily armed whenever stopped and was convicted of spraying a car with an assault rifle – he was sentenced to 360 months. In the end, Frazier was holding the proverbial bag,[3] and consequently, is bearing the brunt of the wrath of the United States government.

## CONCLUSION

For the reasons cited herein, Mr. Frazier respectfully requests this Honorable Court sentence Mr. Frazier to 15 years, "a sentence that is sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C § 3553(a).

---

[3] Frazier would not have been indicted had he not been in possession of the two guns and the gloves used in the murder for which he now stands convicted. And the circumstances of this possession all suggest Frazier's role as that of the "youngin" who was supposed to dispose of the evidence.

Respectfully submitted,

_____/s/_____
Christopher M. Davis #23441

Davis & Davis
1350 Connecticut Ave., NW Suite 202
Washington, DC 20036
(202) 234-7300


_____/s/_____
Adam Daniel Harris

Law Office of Adam D. Harris, L.L.C.
600 Jefferson Plaza
Ste. 201
Rockville, MD 20852
(202) 321-4599


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that Defendant's Memorandum in Aid of Sentencing was sent, via email, to all interested parties on this 16th day of May 2022.

_____/s/_____
Christopher M. Davis